IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CATHERINE BLOOM,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>No. 1:16-cv-00164-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Catherine Bloom, pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Acting Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income ("SSI") payments under Title XVI of the Social Security Act ("Act"). (ECF No. 3.) After careful review of the entire record, the parties' briefs, and arguments presented at a telephonic hearing held on January 16, 2017, the Court[1] AFFIRMS the Commissioner's final decision.

## I. PROCEDURAL HISTORY

Catherine Bloom, age 22 at the time of the administrative law judge's ("ALJ") decision, has a high school education and no past relevant work. (See Certified Administrative Transcript ("Tr."), ECF No. 11 at 148-49.) She alleges that she became disabled on April 19, 2013,[2] due to Asperger's syndrome/autism spectrum disorder and

---

[1] The parties have consented to proceed before the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 15.)

[2] Although Ms. Bloom alleges this earlier onset date, SSI benefits are not actually

1

anxiety. (Tr. 127, 148.) The ALJ followed the familiar five-step sequential evaluation process at 20 C.F.R. § 416.920(a)(4) and determined that Ms. Bloom, while limited by her impairments, could still perform certain unskilled jobs in the national economy and was not disabled as defined by the Act. (Tr. 15-24). The Appeals Council denied Ms. Bloom's request for review, (Tr. 1-5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. §§ 416.1481, 422.210(a). This appeal followed.

## II. SUMMARY OF RELEVANT MEDICAL EVIDENCE AND TESTIMONY

### A. Medical Evidence

Ms. Bloom alleged disability due to Asperger's/autism spectrum disorder and anxiety, (Tr. 148), for which she received regular counseling from Sheila Taylor, a licensed clinical social worker, (Tr. 223-55; see also Tr. 219-22), and underwent two evaluations by neuropsychologist Adam Schwebach, M.D. (Tr. 213-18, 278-81; see also Tr. 257-58, 285-86.)[3] Ms. Bloom saw Ms. Taylor on approximately a monthly basis from mid-2011 to early 2013. These treatment notes reflect that Ms. Bloom focused on her areas of interest (e.g., writing "intricate" fictional stories, reading, and playing piano), lacked initiative in areas outside her areas of interest (e.g., doing household chores), and struggled with social interaction. (See Tr. 223-55.) Ms. Taylor later wrote a letter stating, among other things, that Ms. Bloom required reminders for appointments and

---

payable until the month following the month in which the claimant files an application. See 20 C.F.R. § 416.335. Ms. Bloom filed her application in October 2013. (See Tr. 127-35, 144.)

[3] In addition to seeing Ms. Taylor and Dr. Schwebach, Ms. Bloom received routine primary care from 2011 to 2014 from Natalie Ahrenstorff, PA-C, who recommended ongoing care and finding a part-time job. (Tr. 259-63, 282-83.)

2

hygiene, was not fully aware of her social deficits, was hyper-focused on writing and music and became frustrated with interruptions, had a limited ability to organize things like shopping or meal preparation, had anxiety about activities outside her home, was not likely to improve, and could not manage her own funds. (Tr. 219-22.)

Dr. Schwebach evaluated Ms. Bloom in April 2013 and again in July 2014. He concluded that Ms. Bloom had above-average intelligence but deficits in social functioning and in executive functioning, and that she would need ongoing treatment. (See Tr. 213-18, 257-58, 278-81.) He also indicated that Ms. Bloom would have trouble transitioning into independent living and that she should apply for Social Security disability benefits, apply for vocational rehabilitation, or pursue higher education. (Tr. 218, 281.)

State agency psychiatrist Kenneth Wallis, M.D. and state agency psychologist Garrett Chelsey, Ph.D. reviewed the record in early 2014 and opined that Ms. Bloom's mental impairments caused at most "moderate" mental limitations and would not preclude a range of simple work with reduced public contact. (Tr. 58-62, 69-72.)

**B. Testimony**

At the October 2015 administrative hearing, Ms. Bloom testified that, for the last three or four weeks, she had been working at a bakery eight to eight-and-a-half hours per day two days a week. (Tr. 35.) She got along with her coworkers and did not have problems dealing with the public, although it was stressful when "lots of customers c[a]me in." (Tr. 36.) She said the job was "mundane, but it pays." (Tr. 35.) She otherwise left her home at least twice a week with her parents. (Tr. 37.) On the days she was not working, she spent her time writing, doing research, and reading, and did

3

not have problems concentrating. (Tr. 36-38.) She also did household chores like vacuuming, dusting, and cleaning the cat litter boxes. (Tr. 37-38.) She said she was also part of a Star Trek club that met every month. (Tr. 38). She sometimes got into "little disagreements" with her family, but not that often, and did not get irritable with people she did not know. (Tr. 39.)

Ms. Bloom's mother testified that Ms. Bloom did not want to work and said her job was boring. (Tr. 45, 50.) Ms. Bloom spent days when she was not working using the computer, reading, and writing. (Tr. 46.) Ms. Bloom got along fine with her parents, but had to be reminded to do chores and care for her personal needs, although this had gotten better. (Tr. 46-47, 49.) Ms. Bloom did not speak to her sisters, (Tr. 46), and had not had close friends since school, but had a friend in her Star Trek club and one in another state to whom she wrote letters. (Tr. 47.) Ms. Bloom also went with her family to church, auctions, lunches, and movies. (Tr. 48.)

Psychologist Kristy Farnsworth, Ph.D., testified that Ms. Bloom had Asperger's syndrome and an anxiety disorder, and that her impairments appeared to meet Listing 12.10. (Tr. 41-42.)

A vocational expert testified that someone of Ms. Bloom's age and background, and with her residual functional capacity ("RFC"), could perform work in the national economy, including the unskilled occupations of mail clerk, bakery worker, and cleaner II. (Tr. 51-52.)

### III. STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

4

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation and citation omitted). Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed. Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990). Upon review, the Court "should, indeed must, exercise common sense" and not "insist on technical perfection." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012).

## IV.　DISCUSSION

The ALJ in this case found that Ms. Bloom's mental impairments were not per se disabling but restricted her to work involving only simple, routine, and repetitive tasks; only simple work-related decisions; few (if any) workplace changes; no fast-paced production requirements; and no more than occasional interaction with the public. (Tr. 19, Finding 4.) The ALJ then heard vocational expert testimony identifying three unskilled[4] occupations, constituting nearly 200,000 national jobs, that someone with Ms. Bloom's RFC could still perform. (See Tr. 51-52.) Accordingly, the ALJ found that Ms. Bloom was not disabled as defined by the Act. (Tr. 23-24.) See 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c) (claimant not disabled if she can perform work existing in significant numbers in the national economy).

In challenging the ALJ's decision, Ms. Bloom asserts that the ALJ erred when weighing the medical opinion evidence from Ms. Taylor, Dr. Schwebach, and Dr.

---

[4] By definition, unskilled work is the least complex type of work, involves dealing with changes only in a "routine" work setting, requires little to no judgment and the ability to pay attention for only two-hours at a time, has low concentration and memory requirements, and has the least amount of social interaction. See 20 C.F.R. § 416.968(a); 20 C.F.R., pt. 404, subpt. P, app. 2 §§ 201.00(i), 202.00(g); Social Security Ruling (SSR) 82-41, 1982 WL 31389, at *2; SSR 85-15, 1985 WL 56857, at *4; Program Operations Manual System (POMS) DI § 25020.010(B), 2001 WL 1933437.

5

Farnsworth.  See generally ECF No. 17.  For the reasons discussed below, the Court finds that the ALJ's decision should nonetheless be AFFIRMED.

**A.  Ms. Taylor**

Ms. Bloom first argues that the ALJ did not "weigh" the opinion of Ms. Taylor when assessing her RFC.  (ECF No. 17 at 8.)  While an ALJ must weigh every "medical opinion"—defined in applicable regulations as "statements from acceptable medical sources," such as medical doctors and licensed psychologists, regarding the nature and severity of a claimant's impairments, 20 C.F.R. § 404.1527(a)(1)—the ALJ is not required to weigh opinions from "other sources," such as nurse practitioners and therapists.  Ms. Taylor, a licensed clinical social worker, is an "other source" under the applicable regulations.  See Crowder v. Colvin, 561 F. App'x 740, 744 (10th Cir. 2014) (unpublished) ("A licensed clinical social worker is not an 'acceptable medical source,' but instead is an 'other source.'" (quoting 20 C.F.R. § 416.913(a), (d)). The standard the ALJ must meet when evaluating opinion evidence from an "other source" such as Ms. Taylor is explained in Social Security Regulation ("SSR") 06-03p.[5]  That Ruling states, "although there is a distinction between what an [ALJ] must consider and what the [ALJ] must explain . . . the [ALJ] generally should explain the weight given to opinions from . . . 'other sources' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning."  SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006).  Here, it is undisputed that the ALJ did not assign a specific weight to the evidence from

---

[5] This SSR was rescinded for claims filed on or after March 27, 2017.  See 82 FR 15263-01, 2017 WL 1105348 (Mar. 27, 2017).  Ms. Bloom filed her application in October 2013, (see Tr. 127-35, 144), so this SSR and the corresponding regulations in effect at the time apply to her claim.

6

Ms. Taylor. The Court finds, however, that the ALJ's discussion of the evidence in the decision "otherwise ensure[s]" adequate review as provided in SSR 06-03p. The ALJ generally discussed the evidence from Ms. Taylor, (see Tr. 20), and the decision makes clear that the ALJ drew from it in reaching the restrictive RFC assessment. The Court can follow the ALJ's reasoning in reaching the RFC. Thus, the ALJ did not err with regard to consideration of the evidence from Ms. Taylor.

### B. Dr. Schwebach

Nor did the ALJ err when evaluating the evidence from Dr. Schwebach. The ALJ summarized the evidence from Dr. Schwebach and assigned "partial" weight to it. (Tr. 22.) In doing so, the ALJ noted his concern that the evidence from Dr. Schwebach was not overly helpful in determining the specific functional impact of Ms. Bloom's impairments on her ability to work, but he still "agree[d]" with Dr. Schwebach that Ms. Bloom had limitations in the areas of concentration, focus, and social functioning. (Tr. 22.) As discussed above, the ALJ ultimately limited Ms. Bloom to a reduced range of simple unskilled work to account for these limitations. (Tr. 19, Finding 4.)

Ms. Bloom argues that the ALJ was required to include greater RFC limitations based on the evidence and opinions from Dr. Schwebach. (ECF No. 17 at 10-11.) Although the Court agrees that a different conclusion could also have been drawn regarding the degree of Ms. Bloom's limitations, the ALJ's analysis of Dr. Schwebach's opinions was sufficient to show it was supported by substantial evidence, which is all that is required under the applicable standard of review. See Tillery v. Schweiker, 713 F.3d 601, 603 (10th Cir. 1983) (when the evidence permits varying inferences, the court may not substitute its judgment for that of the ALJ); Lax, 489 F.3d at 1084 ("The

possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (citation and quotation omitted)).

### C. Dr. Farnsworth

Dr. Farnsworth testified that Ms. Bloom's mental impairments appeared to meet Listing 12.10 for autistic disorders. (See Tr. 41-42). The ALJ considered but discounted Dr. Farnsworth's opinion, assigning it "partial" weight. (Tr. 20-21.) Ms. Bloom argues this was reversible error, (ECF No. 17 at 11-14), but the Court disagrees.

Under Listing 12.10, Ms. Bloom had to show that she had an autistic disorder that satisfied both the A- and B-criteria of that listing. The ALJ focused his analysis of Dr. Farnsworth's opinion on the B-criteria, which require at least two of the following: (1) "marked" restriction in activities of daily living; or (2) "marked" difficulties in maintain social functioning; or (3) "marked" difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. See id. at § 12.10B.

The ALJ found that while Ms. Bloom did appear to have "marked" limitations in social functioning, her deficits in activities of daily living and in concentration, persistence, or pace did not rise to the "marked" level when viewed in the context of the record as a whole (and she did not have any extended episodes of decompensation). (Tr. 20-21.) As the ALJ explained throughout the decision, Ms. Bloom engaged in a wide array of daily activities, including many that required substantial concentration,

persistence, or pace.  Ms. Bloom, for instance, was able to work part-time at bakery, volunteer weekly at a library, play piano for a church Christmas program, play computer games, and write her own novels.  (Tr. 20, 21; see Tr. 35-38, 47-48, 216, 221, 225, 229, 235, 252, 260, 262.)  Even if a contrary decision might also be reached, the Court finds that the ALJ's analysis of Dr. Farnsworth's opinion was adequate under the applicable standard of review, particularly when considered in combination with his analysis of Ms. Bloom's degree of limitation in the relevant B-criteria areas at step three of the decision. (See Tr. 17-19, Finding 3.)

## V. CONCLUSION

Because the ALJ's decision is supported by substantial evidence and is free of harmful legal error, the Court hereby AFFIRMS.

DATED this 25th day of January, 2018.

_____
EVELYN J. FURSE
United States Magistrate Judge